UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADY MASOOD,<br>　　　　Plaintiff,<br>　　v.<br>WILLIAM P. BARR et al.,<br>　　　　Defendants. | Case No. 19-cv-07623-JD<br><br>**ORDER RE PETITION FOR HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Habeas petitioner Ady Masood has been held in a county jail since April 10, 2019, while pursuing an application for asylum in the United States. Dkt. No. 1. Masood seeks a custody hearing before an immigration judge, which he has not been afforded during his lengthy detention. The federal respondents filed a return to the petition on behalf of the Attorney General, Acting Secretary of Homeland Security, and Acting Field Director of the San Francisco Immigration and Customs Enforcement (ICE) Field Office. Dkt. No. 8.[1] Masood filed a traverse. Dkt. No. 13. Neither side called for a hearing, and the Court determined that the matter was appropriate for resolution without oral argument. Dkt. No. 16; Civil L.R. 7-1(b).

The petition is granted on the first claim for a due process violation under the Fifth Amendment of the United States Constitution. The government is ordered to release Masood from custody or, within 28 days of the date of this order, provide him with a custody hearing before an immigration judge. If the immigration judge has not issued a decision on the hearing within 14 days of the custody hearing, Masood must be released from detention.

---

[1] Masood also named the Sheriff-Coroner of Yuba County as a respondent, but he has not appeared in the case, and it is unclear whether he was served with a summons. In any event, neither party has raised an issue about the Sheriff-Coroner.

**BACKGROUND**

The parties do not dispute the salient facts. Masood is 30 years old and a native of Saudi Arabia. Dkt. No. 1 at 4. He moved at a young age to the West Bank area in Israel. *Id.* He is deemed to be stateless by the United States. *Id.* at 1.

In April 2019, Masood arrived at the San Francisco International Airport and immediately sought asylum. *Id.* The asylum application is based on Masood's allegations of persecution and harassment in the West Bank for his political and religious views. *Id.* at 5. He is a professed atheist who has left the Muslim faith, which Masood says incited death threats against him as an "infidel." *Id*. He was also labeled a "traitor" after trying unsuccessfully to enlist in the United States military. *Id*. The enlistment attempt occurred in 2016 when Masood entered the United States on a valid B1 visa. *Id.* Masood experienced some minor legal difficulties during this visit but applied for and was granted a voluntary departure from the United States. *Id.*; Dkt. No. 8 at 3-4.

During ICE intake in April 2019, Masood reported several incidents of violence and threats to his life. Dkt. No. 1 at 5. An asylum officer determined that he had a credible fear of persecution were he to be deported. *Id*. at 6. Even so, an immigration judge denied his asylum application in August 2019 and ordered him removed to Israel or Jordan. *Id*. Masood has challenged the deportation order on multiple grounds before the Bureau of Immigration Appeals, and the appeal appears to be pending. *Id*. at 7-8. Masood has also requested a remand of the deportation proceedings based on allegations of ineffective assistance of counsel by his prior lawyer. *Id*. at 8.

Masood has been detained by ICE in the Yuba County Jail since April 10, 2019. *Id*. at 4. The government imposed custody under 8 U.S.C. § 1225(b)(1)(B)(ii) ("Section 1225(b)"), which allows for the detention of aliens with a credible fear of persecution pending further consideration of their asylum applications. In September 2019, Masood filed a parole request to be released to the home of a United States citizen who had agreed to sponsor him, but ICE declined the request with a slew of entirely conclusory statements, some of which Masood alleges were simply wrong as a matter of fact. Dkt. No. 1 at 7. A subsequent parole request in November 2019 was met with

a summary denial that did not reflect any consideration of evidence submitted by Masood. Dkt. No. 13 at 14-15. To date, Masood has been in jail for nearly nine months.

Masood's habeas petition under 28 U.S.C. § 2241 presents several claims, all of which seek the same relief: an individualized custody hearing before a neutral decisionmaker, or, in the alternative, immediate release from custody. The first claim is that his detention without a hearing violates the Fifth Amendment's Due Process Clause. Dkt. No. 1 at 13-14. The Court finds that Masood is entitled to a custody hearing before an immigration judge, and the other claims are reserved for another day as warranted by developments in the case.

## DISCUSSION

### I. JURISDICTION AND VENUE

Because Masood is in custody in Yuba County, which is outside the boundaries of this district, jurisdiction and venue warrant a brief discussion. The Court has jurisdiction under 28 U.S.C. §§ 1331, 2241 to consider constitutional challenges to Masood's continued detention under 8 U.S.C. § 1225(b). *See Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("[I]t is clear we have jurisdiction over petitioners' claims, as does the district court."). The federal officer respondents do not contend otherwise, or challenge the Court's subject matter jurisdiction in any way.

With respect to personal jurisdiction and venue, Masood alleges that his legal custodian, the Acting Field Director of the San Francisco ICE Field Office, is found in this district, and that most of the material events occurred here. Dkt. No. 1 at 2. The relief ordered by the Court will be directed to the San Francisco ICE office. Personal jurisdiction and venue have been demonstrated in this district, and respondents again do not argue for any other result.

### II. LEGAL FRAMEWORK

The law governing immigration custody hearings is in a state of development, and a few points of clarification are useful. Respondents rely heavily on *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), to argue that Section 1225(b) "requires" that Masood remain in custody until his

3

asylum application proceedings are fully resolved. Dkt. No. 8 at 1. *Jennings* reversed a decision by the Ninth Circuit that construed Section 1225(b) to include boundaries on the length of custody and to require hearings. The government also argues that Section 1225(b) is in effect self-limiting because custody can be imposed only for the duration of the asylum proceedings, which the government says are necessarily finite and will end at some point, "as they always do." *Id*. at 9. On that score, the government suggests that Masood is at least partly to blame for his continued detention because he has chosen to pursue an appeal that will delay a conclusive resolution of his asylum application. *Id*.

The main flaw in the government's reasoning is that it reads *Jennings* much too broadly. There is no doubt that the Supreme Court disagreed with the Ninth Circuit's statutory interpretation of Section 1225(b), but it is equally true that it did not reach the constitutional due process challenge that Masood makes here. The Supreme Court specifically left open the constitutional questions attendant to a prolonged detention under Section 1225(b). *Jennings*, 138 S.Ct. at 851. On remand, the Ninth Circuit also declined to consider the constitutional issues in the first instance, or to disturb the preliminary injunction entered by the district court that granted individualized custody hearings before a neutral decisionmaker to members of the class. *Marin*, 909 F.3d at 255-56. The Ninth Circuit noted that the district court should determine the minimum requirements of due process, and "also reassess and reconsider both the clear and convincing evidence standard and the six-month bond hearing requirement." *Id.* At the same time, the Ninth Circuit reaffirmed the principle that lengthy detention without due process is constitutionally suspect. *Id.* at 256 ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so.").

Consequently, *Jennings* does not bar the claim that prolonged detention of an alien without individualized review by a neutral decisionmaker may violate due process. For its part, *Marin* almost invites the constitutional inquiry by observing that while "due process is a 'flexible' concept," Section 1225(b) provides "no process at all." *Marin*, 909 F.3d at 255. The door is by no means closed, as the government would have it, to Masood's claim under the Due Process

4

Clause, the fundamental requirement of which is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976)) (internal quotations marks omitted).

The government tries to avert this conclusion by suggesting that *Marin* should be disregarded as wrongly decided, but the point is not well taken. Although the Court is not bound by circuit precedent when there is an intervening and clearly irreconcilable Supreme Court opinion, *see Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), *Marin* was published after *Jennings*, and the government cannot plausibly say that *Jennings* foreclosed *Marin* in any way, or otherwise displaced our circuit's case law on the constitutional issues raised by immigration detentions.

## III. A CUSTODY HEARING IS REQUIRED

There is no question that Masood is a "person" entitled to "due process of law" before being deprived of "liberty." U.S. Const. amend. V. A well-established line of cases in our circuit has applied this due process guarantee to prolonged immigration detentions without a custody hearing. In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ("*Diouf II*"), for example, the Ninth Circuit concluded that adequate procedural safeguards were required to address "serious constitutional concerns raised by continued detention" beyond six months where "release or removal is not imminent." *Id.* at 1091-92. While *Diouf II* specifically addressed Section 1231(a)(6), its reasoning was based on constitutional considerations of due process, and there is no reason to treat continued detention under Section 1225(b) any differently. *See id.* at 1087 (declining to distinguish between aliens detained under Sections 1226(a) and 1231(a)(6) because "[r]egardless of the stage of the proceedings, the same important interest is at stake -- freedom from prolonged detention").

In this case, the due process problems are virtually self-evident. Masood has been in jail for nearly nine months, and there is no reasonably certain end to his custody in sight. The government cannot predict with any degree of confidence when the BIA appeal will be resolved, or what the timeline might be with the remand request. Either event could lead to further proceedings that might take up many more months, or even years. This does not redound to

5

Masood's discredit, as the government would have it. The BIA appeal and remand motion are perfectly legitimate proceedings he is legally entitled to pursue, and it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his asylum application.

Masood also raises the potential complication created by his "stateless" status. He says, without any meaningful opposition by the government, that neither Israel nor Jordan accepts deportations of aliens in Masood's circumstances. Dkt. No. 1 at 6. This creates a possibility that Masood might face an indefinite period of confinement as "further consideration" of his asylum application could entail a long search for a place of deportation. 8 U.S.C. § 1225(b)(1)(B)(ii).

Other factors weigh in Masood's favor. He has a non-frivolous appeal before the BIA and has diligently prosecuted his asylum application at every turn made known to the Court. He is incarcerated in a county jail facility, and has proffered evidence indicating that the Yuba County Jail has had serious operational problems. *See, e.g.*, Dkt. Nos. 14-8, 14-9, 14-10. His detention in a penal facility is all the more suspect in that he has no record of criminal convictions.

Respondents try to overcome all of this by highlighting decisions that declined habeas relief to an alien detainee, but those cases are not on point. Two cases involved the question of additional hearings to aliens who had already had an initial hearing before an IJ. *Singh v. Nielsen*, No. 18-cv-02490-LB, 2018 WL 4110549, at *2-3 (N.D. Cal. Aug. 29, 2018); *Soto v. Sessions*, No. 18-cv-02891, 2018 WL 3619727, at *5 (N.D. Cal. July 30, 2018). That is not the situation here. The government's reliance on *Gonzalez v. Bonnar* (*Gonzalez I*), No. 18-cv-05321-JSC, 2018 WL 4849684, at *5 (N.D. Cal. Oct. 4, 2018), is particularly misplaced. Gonzalez was denied immediate release on a motion for a temporary restraining order because a hearing in his removal proceedings was imminent. *See id.* The government also overlooks a subsequent decision a few months later that granted Gonzalez's habeas petition and ordered a custody hearing. *Gonzalez v. Bonnar* (*Gonzalez II*), No. 18-cv-05321-JSC, 2019 WL 330906, at *7 (N.D. Cal. Jan. 25, 2019). Even *Ramirez v. Sessions*, arguably the government's most relevant citation, counts against respondents in holding that "the Due Process Clause of the Fifth Amendment requires, at some point in time, an individualized bond hearing for an arriving alien, such as Petitioner, who is

6

detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii)." No. 18-cv-05188-SVK (N.D. Cal. Jan. 30, 2019), Dkt. No. 14 at 1-2.

## IV. A CUSTODY HEARING IS THE APPROPRIATE RELIEF

The remedy for the due process concerns here is an individualized custody hearing. *See Diouf II*, 634 F.3d at 1092; *Casas-Castrillon*, 535 F.3d 942, 951 (9th Cir. 2008); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005).

Respondents say this is not so because Masood had functional equivalents in a "constellation of measures" that afford "meaningful protection" to his "limited constitutional rights." Dkt. No. 8 at 10. The "measures" are said to include "the removal hearing itself, the credible-fear screening process, and the possibility of parole." *Id.*

These events were no substitutes for a custody hearing. That is abundantly clear because Masood did not, in fact, get an individualized review of his detention when he appeared before the immigration judge in his removal proceedings, or on any other occasion.[2] Respondents stack the deck a bit in their favor by relying on the parole procedures while strongly objecting to judicial review of them, Dkt. No. 8 at 11-12, but that too was not a hearing substitute. Even assuming the government's position is correct, which is not without doubt, *see Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006), the record shows no evidence that the parole application process provided Masood with a meaningful opportunity to challenge his detention. See Dkt. No. 1 at 7-8; Dkt. No. 13 at 1-2, 13-15; Dkt. No. 14 at 3-5; Dkt. Nos. 9-15, 9-17 & 9-18. To the contrary, the record indicates that the parole decision was made without a hearing before an immigration judge, and solely on the basis of some rather technical inquiries with respect to 8 U.S.C. § 1182(d)(5). *See* Dkt. No. 1 at 7. It was hardly an "opportunity to be heard at a meaningful time and in a meaningful manner." *Marin*, 909 F.3d at 255 (quoting *Mathews*, 424 U.S. at 333) (internal

---

[2] Conducting a custody hearing at that time would have appeared reasonable and in the interests of justice, as petitioner was unrepresented, yet tasked with gathering evidence, such as affidavits, police reports, and other documentation, to support his applications for relief from removal. *See* Dkt. No. 14-1 at 15-16. Such circumstances further demonstrate the value of granting additional procedural safeguards before continuing to detain an unrepresented alien in a penal facility. *See Diouf II*, 634 F.3d at 1092 n.13 (encouraging government "to afford an alien a hearing before an immigration judge *before* the 180-day threshold has been reached if it is practical to do so and it has already become clear that the alien is facing prolonged detention" (emphasis in original)).

7

quotation marks omitted); *see also Diouf II*, 634 F.3d at 1091 (detention procedures are not adequate if they "do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge").

When, as here, "detention crosses the six-month threshold and release or removal is not imminent," an alien detainee's interest in conditional release from detention becomes "profound," and the value of a custody hearing before an immigration judge outweighs any burden imposed on the government. *Diouf II*, 634 F.3d at 1091-92. Consequently, Masood is entitled to a custody hearing before an immigration judge.

## V. THE CLEAR AND CONVINCING EVIDENCE STANDARD APPLIES

To facilitate the hearing, the Court resolves the parties' dispute about the governing standards. In *Singh v. Holder*, 638 F.3d 1196, 1203-08 (9th Cir. 2011), our circuit applied a clear and convincing evidence standard to the showing the government must make at custody hearings for aliens facing prolonged detention. The government says this standard should not apply here because *Jennings* found no statutory basis for it. Dkt. No. 8 at 12-13 (citing 138 S.Ct. at 848). That is not a relevant point. *Singh* was grounded in the Due Process Clause and the liberty interests it protects. *Singh*, 638 F.3d at 1203-04 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (clear and convincing evidence required because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause")). *Jennings* did not undermine this constitutional consideration in any way.

## CONCLUSION

The petition for a writ of habeas corpus is granted for claim one. The government is directed to release Masood from custody unless, within 28 days of this order, he is granted a custody hearing before an immigration judge where the government will bear the burden to show that petitioner's continued detention is justified by clear and convincing evidence. If the immigration judge's decision is not issued within 14 days of the custody hearing, Masood must be

released from detention.

The parties are directed to promptly advise the Court of any material developments in the immigration proceedings. The Court will set a status conference on the remaining claims in the petition as warranted by further developments.

**IT IS SO ORDERED.**

Dated: January 8, 2020

JAMES DONATO
United States District Judge

9